UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SUNIKA, LLC, *dba The Deffest*,

Plaintiff,

v.

ETONIC HOLDINGS, LLC, ,

Defendants.

Case No. 2:26-cv-03183-HDV-DTB

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [48]**

## I. INTRODUCTION

Plaintiff Sunika, LLC dba the Deffest ("Plaintiff" or the Deffest") brings this trademark and copyright action against Defendants Etonic Holdings, LLC ("Etonic" or "Defendant") and Genesco, Inc. Plaintiff operates a vintage shoe blog at the Deffest.com and alleges that Etonic unlawfully used Plaintiff's intellectual property when relaunching its shoe brand.

Before the Court is Defendant Etonic's Motion to Dismiss ("Motion") [Dkts. 48, 49], which seeks dismissal of the First Amended Complaint ("FAC") [Dkt. 33] pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6). For the reasons discussed more fully below, the Court concludes that Plaintiff has sufficiently alleged a violation of trademark law based on Defendant's use of the Deffest logo on Etonic's websites and social media. Plaintiff's copyright claims also survive because Defendant's "sneaker timeline" challenged by Plaintiff is sufficiently similar to its own protected work.

## II. BACKGROUND

The Deffest is an independent platform dedicated to the preservation and professional curation of vintage sneaker history. FAC ¶ 25. Since 2018, Plaintiff has operated a leading independent website featuring vintage sneaker histories, timelines, archival scans, original research, and in-depth editorial content, and has offered related retail, curatorial, and consulting services. *Id.* Plaintiff uses THE DEFFEST mark in commerce in connection with these activities. *Id.* The Deffest's archival research and sneaker history work has been cited and featured by major sneaker publications, including Complex, Hypebeast, and Sneaker Freaker. *Id.*

Plaintiff is the owner of U.S. Trademark Registration No. 5,989,033 for the mark THE DEFFEST, registered in International Class 35, consisting in part of the following logo:

*Id.* ¶ 24; Complaint ¶ 37.

**A. Vintage Etonic Advertisements with Deffest Logo**

Defendant Etonic is a shoe brand dating back to 1876. FAC ¶ 31. Defendant Genesco acquired an exclusive license to relaunch the Etonic brand in December 2021. *Id.* Plaintiff included on its website (apparently without authorization) four scans and derivative photos of vintage Etonic ads, watermarked with "THE DEFFEST" mark and design on each scan ("Ads"). *Id.* ¶ 26. These include: "Etonic Eclipse Racer and Trainer vintage sneakers from 1981," "The Etonic Reaction 1981 vintage sneaker ad for the vintage Etonic Eclipse trainers," and "The Etonic Reaction 1982 Etonic Courier vintage sneaker ad." *Id.* The Ads display THE DEFFEST trademark, as shown below:












*Id*.

On January 4, 2022, Andy Gilbert, then President of Licensed Brands at Genesco, emailed The Deffest's founder, Michael Monahan, in connection with the Etonic relaunch, stating: "I've seen your website and it's really impressive. It's cool to look through the ads, the shoes and of course the blog. Keep doing what you are doing… It's unique and special." *Id.* ¶ 33.

Beginning in early 2024, as part of its brand relaunch, Defendant Etonic displayed the Ads on its website, etonic.com, its global website, etonic.eu, and its social media channels, including Instagram. *Id.* ¶ 34–35, 39–40.









*Id.* ¶¶ 21, 27.

**B. History of Shoe Timeline**

In December 2018, Plaintiff created "A Timeline of Sneaker Brands: 1876 - 1980," consisting of a curated timeline of many shoe brands' start date, including Etonic's, and captions detailing the origins of each brand ("Timeline"). *Id.* ¶ 27. The Timeline is the subject of U.S. Copyright Registration No. VA 2-476-107, with an effective date of registration of January 15, 2026. *Id.* ¶ 29. The registration identifies the date of first publication as December 5, 2018, and claims as new material the original selection, coordination, arrangement, and text of the work. *Id.*

Starting in February 2024, Defendant posted its own sneaker-related timeline on its website. *Id.* ¶¶ 35, 41. The two timelines are compared below.

**Plaintiff's Timeline**




**Etonic's Timeline**




*Id.* ¶¶ 27, 41.

### C. Claims

Plaintiff alleges claims for trademark infringement (claim one) and false designation of origin (claim 2) under the Lanham act ("Trademark Claims") based on Defendant's posting of the Ads containing THE DEFFEST Logo on Etonic's websites and social media channel. FAC ¶¶ 47–57. Alleging that Etonic copied Plaintiff's Timeline, Plaintiff asserts claims for copyright infringement (claim three) and removal or alteration of copyright management information (claim four). *Id.* ¶¶ 58–68. The FAC also includes an unfair competition ("UCL") claim, under California law (claim five) that is derivative of the other claims. *Id.* 69–71.

The Motion is fully briefed.[1] *See* Opposition [Dkt. 56] and Reply [Dkt. 58]. The Court heard oral argument on October 1, 2026, and took the matter under submission. Hearing Minutes [Dkt. 59].

## III. LEGAL STANDARD

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990)). Where the "motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* "[U]ncontroverted allegations in the complaint must be taken as true." *Id.* (citing *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[1] Defendant filed a Request for Judicial Notice ("RJN"). [Dkt. 50]. Because the Court does not rely on the attached documents, it declines to rule on the RJN.

Under Rule 12(b)(6), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint satisfies this standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In making this determination, allegations of material fact should be construed in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citation omitted).

## IV. DISCUSSION

### A. Personal Jurisdiction

In the Ninth Circuit, courts use a three-prong test to assess specific personal jurisdiction:[2]

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987)).

Here, Defendant purposefully directed its activities to California by creating and making publicly available an interactive website that allows California consumers to view its advertisements and purchase its products. FAC ¶¶ 4–5. The trademark and copyright claims arise directly out of the public's use of that website. *Id.* And it strains credulity to argue (as Etonic implicitly does here) that exercising jurisdiction in this major market would somehow fail to comport with fair play and

[2] It is undisputed that general jurisdiction for Defendant does not lie in California.

substantial justice. In short, the facts alleged in the FAC are more than sufficient to establish specific personal jurisdiction. *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1088, 1094 (9th Cir. 2023) (finding in a trademark action that defendant's sale of products in its regular course of business from its interactive website to the forum sufficient for establishing specific personal jurisdiction).

**B. Trademark Claims**

To state a claim for trademark infringement, a plaintiff must allege facts to demonstrate that (1) plaintiff has a valid, protectable trademark, and (2) that the defendant's use of that mark is likely to cause confusion. *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999) ("To establish a trademark infringement claim under…the Lanham Act [plaintiff] must establish that [defendant] is using a mark confusingly similar to a valid, protectable trademark of [plaintiff's].").

A plaintiff's federal trademark registration is prima facie evidence that the plaintiff owns a valid trademark. 15 U.S.C. § 1057(b). Here, Plaintiff alleges a federally registered trademark for THE DEFFEST logo, which Defendant does not dispute. FAC ¶ 24.

To plead a likelihood of confusion, Plaintiff alleges that Defendant's posting of the Ads (including THE DEFFEST trademark) suggests the view that Plaintiff sponsored, endorsed or approved of Defendant's products, including the Etonic heritage relaunch. *Id.* ¶ 43. Instead of addressing this key allegation, however, Defendant argues that "Etonic had the right to post ***its own advertisements***[.]" Motion at 14 (emphasis in original). But that misses the point. Of course, Etonic could have posted simply its own, original advertisement. But is there a legal basis to post the original Ad including Plaintiff's mark – that is the question presented. Plaintiff maintains that by posting the Ads with THE DEFFEST mark, Defendant is likely to cause reverse confusion, an accepted theory of likely confusion. *See Marketquest Grp., Inc. v. BIC Corp.*, 862 F.3d 927, 932 (9th Cir. 2017) ("reverse confusion occurs when consumers dealing with the senior mark holder believe that they are doing business with the junior one"). As alleged, it is plausible that a sneaker-conscious consumer, visiting Etonic's site and social media, would see THE DEFFEST mark and

conclude that the Plaintiff had some role in curating or sponsoring the Etonic brand relaunch. The Trademark Claims survive.

**C. Copyright Infringement Claim**

Plaintiff alleges that its Timeline is a creative compilation protected by copyright and that Etonic's timeline infringes this copyright. "[F]acts are not copyrightable…compilations of facts generally are." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 111 S. Ct. 1282, 1287 (1991). To state a claim for copyright infringement a plaintiff must allege that (1) it owns a valid copyright in the work; and (2) that the defendant copied protected aspects of the work. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1064 (9th Cir. 2020).

"The second prong contains two separate components: 'copying' (or 'factual copying') and illicit copying (or 'unlawful appropriation')." *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 962 (9th Cir. 2025). "The copying component focuses on whether the defendant copied the plaintiff's protected work." *Id.* Actual copying is required because "independent creation is a complete defense to copyright infringement." *Id.* (citing *Skidmore*, 952 F.3d at 1064). "When the plaintiff lacks direct evidence of copying," he can allege it "circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Id.* (citation omitted).

Furthermore, "copyright law does not forbid all copying." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *overruled on other grounds by, Skidmore*, 952 F.3d at 1066–69. A plaintiff therefore must allege, in addition to copying, "unlawful appropriation." *Biani v. Showtime Networks, Inc.*, 153 F.4th at 963. Unlawful appropriation means that the "defendant copied enough of the plaintiff's protected expression of ... ideas or concepts to render the two works 'substantially similar.'" *Id.* (citation omitted). The Ninth Circuit analyzes "unlawful appropriation under the 'extrinsic' and 'intrinsic' tests." *Id.* The "'extrinsic test' is an objective comparison of specific expressive elements." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 822 (9th Cir. 2002). "[W]hen applying the extrinsic test, a court must filter out and disregard the non-protectible elements in making its substantial similarity determination." *Id.* at 822–823. The extrinsic test is "the only test relevant" to a "district court's ruling on a motion to dismiss," as the intrinsic test is left to the fact-

finder. *Biani*, 153 F.4th at 963. "[I]t is generally disfavored for copyright claims to be dismissed for lack of substantial similarity at the pleading stage." *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 997 (9th Cir. 2025) (citation omitted).

The FAC alleges all the elements needed to state a claim for copyright infringement. While the underlying facts of the Timeline, such as the years shoe brands are founded, are not copyrightable, Plaintiff adequately alleges that the Timeline is a compilation and that its selection and arrangement are sufficiently creative to warrant copyright protection. *See Feist*, 111 S.Ct. at 1294 (factual compilations are entitled to protection where there is creativity in the selection, arrangement, or coordination of the facts). Plaintiff adequately alleges access and factual copying because the Timeline was available on a public website and Defendant viewed the website. *See* FAC ¶¶ 29, 33.

Applying the extrinsic test, an objective visual comparison of the two timelines shows that they are strikingly similar. Filtering out the sneaker brand logos, the dates, and the facts embedded in the captions, the selection of brands is virtually identical. Of the presumably hundreds of potential sneaker brands spanning the past 150+ years, Defendant's timeline includes a total of 32 brands and 31 of them are identical to those selected in Plaintiff's Timeline (which has 33 brands total). Because the creative selection and arrangement of facts is protected under copyright law, this is sufficient at the pleading stage to allege unlawful misappropriation. This claim survives.

**D. Removal or Alteration of Copyright Management Information**

Plaintiff alleges that Defendant violated 17 U.S.C. § 1202(b) by copying the Timeline, removing the DEFFEST watermark and website identifier and posting their timeline. The "Digital Millennium Copyright Act prohibits, inter alia, the distribution of works 'knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law,' and with knowledge that such distribution 'will induce, enable, facilitate, or conceal' copyright infringement." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1187 (2016) (citing 17 U.S.C. § 1202(b)).

Defendant argues that because THE DEFFEST is Plaintiff's registered trademark, the watermark and website identifier cannot be copyright management information ("CMI"), citing to an

out-of-circuit district court opinion, among other unpersuasive authority. However, the Court finds that at the pleading stage, the allegations fit into one of the broad categories of CMI defined by the statute.[3] Therefore, this claim may proceed.

**E. UCL Claim**

The FAC includes a claim for violation of California's Unfair Competition Law. FAC ¶¶ 69–71. The UCL prohibits "unlawful, unfair or fraudulent" acts, with each of the three prongs providing a different theory of liability. Cal. Bus. & Prof. Code § 17200. Because the FAC states claims under trademark and copyright law, the UCL claim survives at least under the "unlawful" prong. *See CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 150 F.4th 1056, 1068 (9th Cir. 2025) (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) for the proposition that the UCL's "unlawful" prong borrows violations of other laws and treats them as unlawful

---

[3] CMI is defined as:

> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
> (2) The name of, and other identifying information about, the author of a work.
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
> (4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.
> (5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.
> (6) Terms and conditions for use of the work.
> (7) Identifying numbers or symbols referring to such information or links to such information.
> (8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

17 U.S.C. § 1202(c).

practices”); *See also, Rivas v. Wells Fargo Bank, N.A.*, 2016 WL 8730674, at *10 (E.D. Cal. Dec. 9, 2016) (“Because Plaintiff has pled a valid claim under a borrowed law, Plaintiff's UCL claim may proceed[.]”) (citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).[4]

## V. CONCLUSION

Defendant’s Motion is denied.

Dated: October 21, 2026

Hernán D. Vera
United States District Judge

[4] Because “claim splitting” is not appropriate under a Rule 12 Motion, the Court does not address whether Plaintiff’s allegations state a UCL claim under the other two prongs of the statute.